Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567  Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

STACIA CULLORS, an individual; L.P., a minor, N.B., a minor, and V.B., a minor, through their guardian ad litem STACIA CULLORS; ANTHONY BACANI, an individual; D.B., a minor and E.B., a minor, through their guardian ad litem ANTHONY BACANI; JENNIFER CULLORS, an individual; A.C., a minor, and J.C., a minor, through their guardian ad litem JENNIFER CULLORS, and on behalf of all others similarly situated,

          Plaintiffs,

vs.

BEECH-NUT NUTRITION COMPANY; NURTURE, INC.; PLUM, INC. d.b.a. PLUM ORGANICS; GERBER PRODUCTS COMPANY; WALMART, INC.; SPROUT FOODS, INC.; and DOES 1 through 20 inclusive,

          Defendants.
_____

Case No.:  2:22-cv-02324 RGK (Ex)

**SECOND AMENDED COMPLAINT FOR DAMAGES**

**(1) FRAUDULENT CONCEALMENT**

**(2) NEGLIGENT MISREPRESENTATION**

**(3) VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ. ("UCL")**

**(4) VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770, *et seq*. ("CLRA")**

**(5) UNJUST ENRICHMENT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………….......…...…2

INTRODUCTION……………………………………………………………....3

PARTIES………………………………………………………….………....6

     I.    Plaintiffs……………………………………….………..6

     II.   Defendants…………………………………………………10

JURISDICTION AND VENUE……………………………….…………13

GENERAL ALLEGATIONS……………………………………………13

    *Arsenic in Defendant's Baby Food*……………………………………14

    *Lead in Defendant's Baby Food*……………………………………15

    *Cadmium in Defendant's Baby Food*……………………………16

    *Mercury in Defendant's Baby Food*……………………………16

    *Independent Data with Regards to Defendants Walmart, Plum and Sprout*…………17

    *Defendants' Baby Food*……………………………………………18

    *Consumer Expectations Regarding Baby Food*……………………………20

CLASS ACTION ALLEGATIONS……………………………….…………22

CAUSES OF ACTION……………………………………….…………26

    COUNT I: FRAUDULENT CONCEALMENT…………………………26

    COUNT II: NEGLIGENT MISREPRESENTATION……………………27

    COUNT III: VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE
    SECTIONS 17200 ET SEQ. ("UCL")……………………………28

    COUNT IV: VIOLATION OF CALIFORNIA CONSUMER LEGAL
    REMEDIES ACT, CAL. CIV. CODE SECTION 1770, *et seq.* ("CLRA")…………32

    COUNT V: UNJUST ENRICHMENT……………………………..…34

PRAYER FOR RELIEF………………………………………………35

JURY TRIAL DEMAND……………………………………………36

*PLAINTIFFS' SECOND AMENDED COMPLAINT*
*[CLASS-ACTION]*

COME NOW Plaintiffs STACIA CULLORS, an individual, L.P., a minor, N.B., a minor, and V.B., a minor, through their guardian ad litem STACIA CULLORS, ANTHONY BACANI, an individual, D.B., a minor, and E.B., a minor, through their guardian ad litem ANTHONY BACANI, JENNIFER CULLORS, an individual, as well as A.C., a minor, and J.C., a minor through their guardian ad litem JENNIFER CULLORS, and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against BEECH-NUT NUTRITION COMPANY ("BEECH-NUT"), NURTURE, INC. ("NURTURE"), PLUM, INC. d.b.a. PLUM ORGANICS ("PLUM"), GERBER PRODUCTS COMPANY ("GERBER"), WALMART, INC. ("WALMART"), SPROUT FOODS, INC. ("SPROUT"), and DOES 1 through 20, inclusive (collectively "Defendants"), seeking damages and relief on behalf of themselves and for all others similarly situated for: fraudulent concealment, negligent misrepresentation, violation of California's Unfair Competition Law - *Business & Professions Code* sections 17200, *et seq*. ("UCL"), California's Consumer Legal Remedies Act - *Civil Code* sections 1750, *et seq*. ("CLRA"), unjust enrichment, and related claims as stated herein as below. Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## INTRODUCTION

This case involves a series of manufacturers, BEECH-NUT NUTRITION COMPANY ("Beech-Nut"), NURTURE, INC. ("Nurture"), PLUM, INC. d.b.a. PLUM ORGANICS ("Plum"), GERBER PRODUCTS COMPANY ("Gerber"), WALMART, INC. ("Walmart"), and SPROUT FOODS, INC. ("Sprout") (collectively referred to as "Defendants") that knowingly sold baby food products ("Baby Foods") which contain high levels of toxic heavy metals including mercury, lead, arsenic and cadmium to Plaintiffs.

Plaintiffs are consumers who purchased Defendants' Baby Foods reasonably believing that such baby foods are safe, nutritious, and free from harmful toxins contaminants and chemicals.

In reality, and despite Defendants' promises and reassurances to parents that their products are pure, natural, safe and healthy, these Baby Foods contain heavy metals that are not pure, are unnatural, are unsafe, and pose a major risk to babies and infants. Had parents and/or guardians

been fully informed about the contents of the Baby Foods they purchased, they would not have bought these Baby Foods nor fed them to their children.

In February 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform released a report ("Report") containing outrageous details of Defendants' tainted Baby Foods based on the submission of internal test results and company documents. Through this report, it came to light that Defendants' Baby Foods are laced with shocking amounts of toxic heavy metals. Specifically, the Subcommittee found that Defendants sell Baby Foods containing as much as 180 parts per billion ("ppb")[1] inorganic arsenic, 6441 ppb lead, 10 ppb mercury, and manufacture their Baby Foods using ingredients containing as much as 913.4 ppb arsenic, 886.9 ppb lead, and 344.55 ppb cadmium, far beyond the regulatory standards.

These numbers are outrageous given that in comparison, the U.S. Food and Drug Administration ("FDA") has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic, 5 ppb lead and 5 ppb cadmium, and the U.S. Environmental Protection Agency ("EPA") has capped the allowable level of mercury in drinking water at 2 ppb. The Report held that the test results of Baby Foods and their ingredients "eclipse those levels: including results up to **91 times** the arsenic level, up to **177 times** the lead level, up to **69 times** the cadmium level, and up to **5 times** the mercury level."[2]

The House Staff Report highlighted the high levels of high toxic metals in numerous baby foods produced by Defendants, namely Defendants Beech-Nut, Nurture and Gerber who cooperated with Congress's investigation. Defendants Plum, Walmart and Sprout refused cooperation with the Subcommittee which was highly suggestive of their misconduct given their choice not to cooperate with federal regulators.[3]

---

[1] Ppb (or ppbm) is used to measure the concentration of a contaminant in soils, sediments, and water. 1 ppb equals 1 microgram of substance per kg of solid.

[2] Staff Report, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform U.S. House of Representatives, *Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury* (Feb. 4, 2021) ("Subcommittee Report") at 4 (attached as Exhibit "A").

[3] *Id*. at 2.

Furthermore, in the Report, the Subcommittee concluded that "[m]anufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[4] Additionally, the Report held that exposure to toxic heavy metals causes:

a) permanent decreases in IQ

b) diminished future economic productivity

c) increased risk of future criminal and antisocial behavior in children.

d) affected and endanger infant neurological development and long-term brain function.

e) and other unknown and harmful effects to children.[5]

Defendants knew or should have known that their Baby Foods contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. Defendants knew or should have known that such toxic metals are not fit for consumption, and knew or should have known that its Baby Foods are detrimental to the health of babies. In fact, Defendants had no reasonable ground for believing that their Baby Foods were free from toxic heavy metals, or that such toxic metals were appropriate for sale in Baby Foods.

The high levels of toxic heavy metals found in Defendants' Baby Foods are as a result of the ingredients used by Defendants to manufacture these Baby Foods, disregard of regulatory standards, and corporate policies which failed to test finished products before they were distributed into the market, and the setting of dangerously inflated internal limits which Defendants easily ignored, leading to the purchase of parents and/or guardians of these products and eventually consumption by vulnerable children.

Defendants continue to wrongfully induce consumers to purchase its Baby Foods that are not as advertised. Plaintiffs are unable to purchase Baby Foods from any of the Defendants with

---

[4] *Id*. at 59.
[5] *Id*. at 2.

any degree of certainty that these foods will not contain toxic heavy metals or other undesirable toxins or contaminants.

Plaintiffs brings this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use any of Defendants' tainted Baby Foods.

As a result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for baby foods that did not deliver what they promised. They paid the purchase price on the assumption that the labeling of the baby foods was accurate and that it was free of toxic heavy metals and safe to ingest. Plaintiffs would not have paid this money or fed their children food containing toxic heavy metals had they known the truth that Defendants' products contain excessive degrees of toxic heavy metals.

## PARTIES

### PLAINTIFFS

1.      Plaintiffs are, and at all times relevant here, have been citizens of the state of California. Additionally, unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the State of California.

2.      In making their purchasing decisions, Plaintiffs Stacia Cullors, Anthony Bacani and Jennifer Cullors consider how healthy baby food products are, including the ingredients and nutritional value of those products. In fact, these baby foods by the various Defendants' brands, which were more expensive than cheaper alternatives, were purchased because Plaintiffs Stacia Cullors, Anthony Bacani and Jennifer Cullors were led to believe that the Baby Foods from these brands were healthier and safer for consumption by the remaining Plaintiffs.

3.      On numerous occasions, Plaintiffs Stacia Cullors, Anthony Bacani and Jennifer Cullors have purchased the Baby Foods from various stores including Target, Walmart, Albertsons and Walgreens.  Specifically, Plaintiff Stacia Cullors purchased hundreds of different varieties of Defendants' baby food products in California from September 2009 to May 2012, and

again from February 2020 to December 2021; Plaintiff Anthony Bacani purchased hundreds of different varieties of Defendants' baby food products in California from March 2011 to November 2014 and again from May 2016 to January 2019; and Plaintiff Jennifer Cullors purchased hundreds of different varieties of Defendants' baby food products in California from January 2011 to September 2013, and again from February 2020 to December 2021.

4.    Minor Plaintiffs L.P., N.B., V.B., D.B., E.B., A.C., and J.C., were exposed to and consumed the below-mentioned Baby Foods over hundreds of times during a span of several years.  Specifically, Plaintiff L.P. was exposed to and consumed these Baby Foods over 100 times between September 2009 to May 2012; Plaintiff N.B. was exposed to and consumed these Baby Foods over 100 times between February 2020 to December 2021; Plaintiff V.B. was exposed to and consumed these Baby Foods over 50 times between September 2021 to December 2021; Plaintiff D.B. was exposed to and consumed these Baby Foods over 100 times between March 2011 to November 2014; Plaintiff E.B. was exposed to and consumed these Baby Foods over 100 times between May 2016 to January 2019; Plaintiff A.C. was exposed to and consumed these Baby Foods over 100 times between January 2011 to September 2013; and Plaintiff J.C. was exposed to and consumed these Baby Foods over 100 times between February 2020 to December 2021.

5.    The Baby Foods purchased and consumed by Plaintiffs from Beech-Nut during the above-mentioned time periods were the following:

- Beech-Nut Rice Cereal (recalled on June 8, 2021)
- Rice Single Grain Baby Cereal
- Oatmeal Whole Grain Baby Cereal
- Classics Sweet Carrots – Stage 2
- Organics Just Carrots – Stage 1
- Naturals Just Sweet Potatoes – Stage 1
- Classics Sweet Potatoes – Stage 2
- Classics Sweet Peas – Stage 2
- Beechnut Naturals just Butternut Squash – Stage 1
- Organic Just Apples
- Naturals Bananas – Stage 1
- Naturals Beets, Pear & Pomegranate
- Classics mixed vegetables – Stage 2
- Classics Chicken & Chicken Broth

- Classics Turkey and Turkey Broth
- Breakfast on the go Yogurt, Banana and Mixed Berry Blend

6.      The Baby Foods purchased and consumed by Plaintiffs from Nurture, which sells Baby Foods under the brand name HappyBABY, during the above-mentioned time periods were the following:

- Oats & Quinoa Baby Cereal Organic Whole Grains with Iron – Sitting Baby
- Oatmeal Baby Cereal, clearly crafted – Organic Whole Grains for Sitting baby
- Sweet Potatoes – Stage 1
- Organic Pears – Stage 1
- Clearly Crafted Prunes Organic Baby Food
- Simple Combos Apples, Spinach & Kale
- Superfood Puffs – Apple & Broccoli Organic Grain Snack
- Superfood Puffs Organic Grain Snack – Sweet Potato & Carrot
- Organic Teethers Blueberry & Purple Carrot – Sitting
- Apples, Sweet Potatoes & Granola Clearly Crafted Organic Baby food
- Organic Rice Cakes Puffed Rice Snack

7.      The Baby Foods purchased and consumed by Plaintiffs from Plum, during the above-mentioned time periods were the following:

- Just Sweet Potato Organic Baby Food – 1, 4 months and up
- Just Peaches – organic baby food – for 4+ months (stage 1)
- Just Prunes Organic Baby Food – 1, 4 months & up
- Little Teethers Organic Multigrain Teething Wafers – Banana with Pumpkin – Baby Crawler

8.      The Baby Foods purchased and consumed by Plaintiffs from Gerber, during the above-mentioned time periods were the following:

- Banana – Sitter 2nd Foods
- Peach – Sitter 2nd Foods
- Pear – Sitter 2nd Foods
- Organic Mango Apple Carrot Kale – Sitter 2nd food
- Carrot Pear Blackberry – Sitter 2nd Foods
- Organic Apple Blueberry Spinach – Sitter 2nd Food
- Apple Sweet Potato with Cinnamon – Toddler 12+ months
- Carrot Sweet Potato Pea – Sitter 2nd Foods
- Apple Juice from Concentrate – Toddler 12+ months

- Apple Prune Juice from Concentrate – Toddler 12+ months
- Variety Pack Juices from Concentrate – White Grape
- Pear Juice from Concentrate 100% Juice – Toddler 12+ months
- Mashed Potatoes & Gravy with Roasted Chicken and a side of carrots – toddler
- Chicken Rice dinner – Sitter 2nd Foods
- Turkey Rice Dinner – Sitter 2nd Foods
- Beef and Gravy 2nd foods
- Ham and Gravy 2nd foods
- Puffs Banana Cereal Snack – Crawler 8+ months
- Teether Wheels – Apple Harvest – Crawlers
- Yogurt Blends Strawberry Snack – Crawler 8+ months
- Arrowroot Biscuits – crawler 10+ months
- Rice Single Grain Cereal
- Multigrain Cereal – Sitter 2nd Foods
- Oatmeal Single Grain Cereal
- Carrot – Sitter 2nd food
- Carrot – Supported Sitter 1st Foods
- Sweet Potato Supported Sitter 1st Foods Tub
- Sweet Potato – Sitter 2nd food
- Sweet Potato – Supported Sitter 1st Foods
- Pea – Sitter 2nd Foods
- Green Bean – Sitter 2nd Food

9.    The Baby Foods purchased and consumed by Plaintiffs from Walmart, under the brand name Parent's Choice, during the above-mentioned time periods were the following:

- Parent's Choice Stage 2 (6+ months) Carrot
- Parent's Choice Stage 1 (4-6 months) Sweet Potato
- Parent's Choice Stage 2 (6+ months) Organic Butternut Squash Vegetable Puree
- Parent's Choice Stage 3 (9+ months) Little Hearts Strawberry Yogurt Cereal
- Parent's Choice Rice Baby Cereal (recalled in October 2021)

10.    The Baby Foods purchased and consumed by Plaintiffs from Sprout during the above-mentioned time periods were the following:

- Prunes Organic Baby Food
- Carrot Apple Mango Organic Baby Food
- Butternut Chickpea Quinoa & Dates Organic Baby Food
- Organic Quinoa Puffs Baby Cereal Snack – Apple & Kale

11.    All of these products were purchased and consumed by Plaintiffs because they believed these products were healthy Baby Foods based on the labeling on the products and the advertisements by Defendants which promoted these Baby Foods as organic and nutritious. At no time during their purchase and consumption were Plaintiffs aware that Defendants' claims with regards to the Baby Foods were false and misleading, and that these products actually contained high levels of heavy metals, chemicals or toxins.

12.    Plaintiffs would not have purchased these Baby Foods, at times paying premium prices, nor would have consumed these products if they were aware of the presence of the alleged heavy metals, chemicals, and toxins.  Plaintiffs would be willing to purchase the Baby Foods in the future if Plaintiffs could be certain that they do not contain, or do not have a risk of containing, heavy metals, chemicals or toxins.

**DEFENDANTS**

13.    Defendant Beech-Nut Nutrition Company ("Beech-Nut") is a citizen of Delaware and New York with its principal place of business located at 1 Nutritious Pl., Amsterdam, NY 12010. Beech-Nut sells Baby Foods under the brand name Beech-Nut. Beech-Nut produces Baby Foods aimed at infants 4+ months up to 12+ months and includes a variety of cereals, "jars", and "pouches" for these age groups. At all relevant times, Beech-Nut has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within the State of California and Los Angeles County.

14.    Defendant Nurture, Inc. ("Nurture"), is a citizen of Delaware and New York with its principal place of business located at 40 Fulton St, 17th Floor, New York, NY 10038-1850. Nurture owns Happy Family Brands (including Happy Family Organics) and sells Baby Foods under the brand name HappyBABY. Nurture classifies its HappyBABY range of products according to three categories: "baby", "tot", and "mama". The "baby" category is comprised of foods, including "starting solids", intended for age groups 0-7+ months, the "tot" category covers 12+ months, and "mama" includes infant formulas for newborn babies.  At all relevant times, Nurture has conducted business and derived substantial revenue from its manufacturing,

advertising, distributing, selling, and marketing of HappyBABY within the State of California and Los Angeles County. At all times material hereto, Defendants, and each of them, engaged in their unfair and deceptive billing practices within the jurisdiction of this Court.

15.    Defendant PLUM, INC. d.b.a. PLUM ORGANICS is a citizen of Delaware and California with its principal place of business located at 1485 Park A venue, Emeryville, California 94608. Plum sells Baby Foods under the brand name Plum Organics. Plum's products are divided into groups according to the targeted infant or toddler age and/or type of food product. For example, there are five groups designated for the youngest infants: Stage 1 (4+ months old), Stage 2 (6+ months old), Stage 3 (6+ months old), "Super Puffs", and "Little Teethers". At all relevant times, Plum has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within the State of California and Los Angeles County.

16.    Defendant Gerber Products Company ("Gerber") is a citizen of Michigan with its principal place of business located at 445 State Street, Fremont, MI 49413-0001. Gerber sells Baby Foods under the brand name Gerber. Gerber organizes its products into broad categories of "formula", "baby cereal", "baby food", "snacks", "meals & sides" "beverages" and "organic". At all relevant times, Gerber has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within the State of California and Los Angeles County.

17.    Defendant Walmart, Inc. ("Walmart") is a citizen of Delaware and Arkansas with its principal place of business located at 702 S.W. 8th St. Bentonville, AK 72716. Walmart sells Baby Foods under the brand name Parent's Choice. Walmart's Parent's Choice offers a wide selection of baby foods ranging from "sweet potatoes & corn" to "toddler cookies" and "yogurt bites". At all relevant times, Walmart has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within the State of California and Los Angeles County.

18.    Defendant Sprout Foods, Inc. ("Sprout") is a citizen of Delaware and New

Jersey with its principal place of business located at 50 Chestnut Ridge Rd, Montvale, NJ 07645. Sprout sells Baby Foods under the brand name Sprout Organic Foods. Sprout organizes its Baby Foods selection according to three categories: Stage 2 (6 months+); Stage 3 (8 months+); and Toddler. At all relevant times, Sprout has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within the State of California and Los Angeles County.

19.   Plaintiffs are uncertain of the true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, and therefore, sue said Defendants under said fictitious names.   Plaintiffs will amend this complaint further to insert the true names and capacities of said Defendants when the same are discovered.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and are liable to the named Plaintiffs, and all other similarly situated on the claims hereinafter set forth.  Said named Defendants and fictitiously named Defendants are hereinafter collectively referred to as "Defendants."

20.   At all times mentioned, all Defendants and each of them, inclusive, were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of California, including in Los Angeles County, either directly or indirectly through third parties or related entities, Baby Foods.

21.   At relevant times, Defendants and each of them, inclusive, conducted regular and sustained business and engaged in substantial commerce and business activity in the State of California, which included but was not limited to selling, marketing and distributing Baby Foods in the State of California and Los Angeles County.

22.    At all relevant times, Defendants and each of them, inclusive, expected or should have expected that their acts would have consequences within the United States of America including the State of California and including Los Angeles County, said Defendants derived and derive substantial revenue therefrom.

**JURISDICTION AND VENUE**

23.     This Court has jurisdiction over this action pursuant to the California Constitution.

24.     The Court has personal jurisdiction over Defendant Plum because this Defendant is a citizen of the State of California. Additionally, the Court has personal jurisdiction over Beech-Nut, Nurture, Gerber, Walmart, Sprout and Plum as each of these Defendants is authorized and licensed to conduct business in the State of California, maintains and carries on systematic and continuous contacts in the State of California, and conducts business within the State of California, and/or otherwise intentionally avails itself of the California market through its promotion, sales, distribution and marketing within the State to render the exercise of jurisdiction by this Court permissible.

25.     Venue is proper in this Court because all Defendants do business in Los Angeles County, and substantial parts of the events giving rise to Plaintiffs' claims occurred in this judicial district.

**GENERAL ALLEGATIONS**

26.     Inorganic arsenic, lead, cadmium, and mercury are toxic heavy metals (the "Toxic Heavy Metals"). The United States Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared these Toxic Heavy Metals dangerous to human health. Specifically, FDA states that these Toxic Heavy Metals have "no established health benefit," "lead to illness, impairment, and in high doses, death," and because of bioaccumulation, "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[6]

27.     The dangerous effects of these toxins are worsened in developing and vulnerable bodies and brains of babies and children, who FDA explains are at the greatest risk of harm. *See* Subcommittee Report, p. 2. Exposure, such as ingestion, of Toxic Heavy Metals by babies and children leads to untreatable and permanent brain damage, resulting in reduced intelligence and behavioral problems. For instance, scientific studies have connected exposure to lead to

---

[6] FDA, *Metals and Your Food*, available at: https://www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food.

a substantial decrease in children's total IQ points and their lifetime earning capacity. *See* Subcommittee Report, p. 9.

28. Additionally, Exposure to Toxic Heavy etals (such as arsenic, lead, cadmium, and mercury) causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children, and can endanger infant neurological development and long-term brain function. *See*, Subcommittee Report, p. 2.

29. Because Toxic Heavy Metals have no benefits and severe detriments, Healthy Babies Bright Futures ("HBBF"), an alliance of nonprofit organizations, scientists, and donors whose work is cited favorably in the Subcommittee Report, has concluded that baby food should have no measurable amount of arsenic, lead, cadmium, or mercury. In fact, in October 2019, HBBF published a report investigation the presence of Toxic Heavy Metals in baby foods.[7] The HBBF Report found that 95% of "baby foods tested were contaminated with one or more of four toxic heavy metals – arsenic, lead, cadmium and mercury." All but nine of 168 baby foods tested, contained at least one metal, though most contained more than one.[8] Specifically, the HBBF report identified "puffs and other snacks made with rice flour," "teething biscuits and rice rusks," "infant rice cereal," "apple, pear, grape, and other fruit juices," and carrots and sweet potatoes" manufactured by the Defendants as particularly high in Toxic Heavy Metals.[9] Given these results, and in response to reports alleging high levels of Toxic Heavy Metals in baby food sold in the United States, the House Subcommittee launched an investigation into the presence of Toxic Heavy Metals in certain brands of baby food, including Defendants' baby food, and the results of the investigation were set forth in the Subcommittee Report, which was released on February 4, 2021. Defendants Walmart, Plum, and Sprout refused to cooperate with the Subcommittee's investigation.

### Arsenic in Defendant's Baby Food

30. According to the Subcommittee Report, arsenic was present in all brands of

_____

[7] Healthy Babies Bright Futures, What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead (Oct. 2019) ("HBBF Report") (attached as Exhibit "B").

[8] *Id*. at 6.

[9] *Id*. at 10-11.

Baby food responding to the House Subcommittee's investigation. In particular, Defendant Nurture (HappyBABY) sold baby foods after tests showed they contained as much as 180 parts per billion (ppb) inorganic arsenic. Over 25% of the products Nurture tested before sale contained over 100 ppb inorganic arsenic. Nurture's testing shows that the typical baby food product it sold contained 60 ppb inorganic arsenic. Furthermore, Defendant Beech-Nut used ingredients that test results showed have as high as 913.4 ppb arsenic. In fact, Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as "crumb softness." On June 8, 2021, four months following the Congressional findings, Beech-Nut issued a voluntary recall of its infant single grain rice cereal and exited the rice cereal market completely, confirming that its products exceed regulatory arsenic limits. Additionally, Defendant Gerber used high-arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic.

31.    The levels of toxic arsenic in Defendant's baby food far exceeded the 10 ppb Limit the FDA has set for arsenic in bottled water that is legal to sell to any consumer, even full-grown adults.[10]

32.    Arsenic is the most dangerous of the Toxic Heavy Metals at issue and poses the most significant risk to human health.[11]  Currently known risks of arsenic to health include, but are not limited to, respiratory, gastrointestinal, neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children.[12]

### Lead in Defendant's Baby Food

33.    Lead was also present in Defendants' baby food. Specifically, the Subcommittee Report found that Defendant Nurture (HappyBABY) sold finished baby food products that tested as high as 641 ppb lead, and that almost 20% of the baby food products that Nurture tested contained over 10 ppb lead. Furthermore, the report found that Defendant Beech-Nut used ingredients containing as much as 886.9 ppb lead, and that Defendant Beech-Nut used many ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead. Additionally, Defendant Gerber used

---

[10] Subcommittee Report at p. 4.

[11] *Id*. at 10.

[12] Agency for Toxic Substances and Disease Registry, ATSDR's Substance Prior List (2019), available at http://www.atsdr.cdc.gov/spl/index.html#2019spl.

ingredients that tested as high as 48 ppb lead, and used many ingredients containing over 20 ppb lead.

34.    For comparison, the FDA has set the maximum level of lead in bottled water at 5 ppb.[13]

35.    Lead is the second most dangerous of the Toxic Heavy Metals discussed in the Subcommittee Report because lead can accumulate in the body, and even small doses of lead have deleterious effects on children, including health, behavioral, cognitive, and development issues. The FDA states that "[h]igh levels of lead exposure can seriously harm children's health and development, specifically the brain and nervous system."[14]

### Cadmium in Defendant's Baby Food

36.    Cadmium was another Toxic Heavy Metal found to be present in all brands of baby food subject to the House Subcommittee's investigation.[15] In particular, Defendant Beech-Nut used 105 ingredients that tested over 20 ppb cadmium, with some testing much higher, up to 344.55 ppb cadmium.  Sixty-five percent of Defendant Nurture's (HappyBABY) finished baby food products contained more than 5 ppb cadmium, while seventy-five percent of Gerber's carrots contained cadmium in excess of 5 ppb, with some containing up to 87 ppb cadmium.

37.    For comparison, the FDA has set the maximum level of cadmium in bottled water at 5 ppb.[16]

38.    Cadmium is the seventh most dangerous heavy metal toxin according to the ATSDR.  Exposure to cadmium is linked with decreases in IQ and development of Attention Deficit Hyperactivity Disorder ("ADHD").  The EPA and FDA set the limit at 5 ppb of cadmium in drinking water and bottled water.  The WHO limits cadmium in drinking water at 3 ppb.

### Mercury in Defendant's Baby Food

39.    Lastly, Mercury another Toxic Heavy Metal was found to be present in all brands of baby food subject to the House Subcommittee's investigation.  *See*, Subcommittee Report, p. 4.  The report found that Defendant Nurture (HappyBABY) sold finished baby food products

---

13 Subcommittee Report at p. 4.

14 FDA, *Metals and Your Food*, available at: https://www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food.

15 Subcommittee Report at p. 3.

16 *Id*. at 4.

containing as much as 10 ppb mercury, Defendant Beech-Nut does not even test for mercury in baby food, and Defendant Gerber rarely tests for mercury in its baby foods.

40.     These numbers are outrageous given that in comparison, the U.S. Food and Drug Administration ("FDA") has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic, 5 ppb lead and 5 ppb cadmium, and the U.S. Environmental Protection Agency ("EPA") has capped the allowable level of mercury in drinking water at 2 ppb.  It is of importance to note that these limits were created in reference to **adult** exposure, not infants, who are much more vulnerable and susceptible to various illnesses.

### *Independent Data with Regards to Defendants Walmart, Plum and Sprout*

41.     Walmart, Plum, and Sprout refused to cooperate with the Subcommittee's investigation, highly indicative of their wrongdoing, but nonetheless independent data confirms that the baby food of these companies is similarly tainted, as the HBBF report observed that Walmart's Parent's Choice brand products contain 66 ppb inorganic arsenic, 26.9 ppb lead, 26.` ppb cadmium, and 2.05 ppb mercury.[17]

42.     Plum refused to produce its testing standards and specific testing results to the Subcommittee.[18]  In fact, it has hidden its policies and the actual level of toxic heavy metals in its products and instead, provided the Subcommittee with a spreadsheet declaring that every one of its products "meets criteria," while declining to state what those criteria are.[19]  It is troubling that Plum admitted that for mercury, the company has *no* criterion whatsoever, stating: "No specific threshold established because no high-risk ingredients are used."   Nonetheless, Plum still marketed every food as "meets criteria" for mercury, which the Subcommittee noted was "misleading" and "raises questions about what [Plum's] other thresholds actually are, and whether

---

[17] *See* HBBF Report at 21, 22, 25-27.

[18] Subcommittee Report at p. 44.

[19] Campbell, Product Heavy Metal Test Results (Dec. 11, 2019) (online at http://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf).

they exist."[20]  In fact, HBBF's independent testing has confirmed the presence of Toxic Heavy Metals in Plum's baby food.[21]

43.    While Sprout did not respond to the Subcommittee's request at all, the independent testing conducted by HBBF confirmed that Sprout's Baby Foods are similarly tainted by substantial amounts of Toxic Heavy Metals.[22]

*Defendants' Baby Food*

44.    Defendants manufacture, distribute, advertise, market, and sell brands of baby food, and direct, control, and participate in the manufacturing and packaging of the baby food products that they sell.  As part of that direction, control, and participation, Defendants determine and are responsible for the ingredients used in their baby food.

45.    Defendants know and are responsible for the ingredients in their baby food products that they sell.

46.    Defendants created, developed, reviewed, authorized, and are responsible for the textual and graphic content on the packaging of the baby food products that they sell.  The labels on Defendants' Baby Foods contain their standardized labels created, developed, reviewed, and authorized by Defendants.  Defendants knew, created, developed, reviewed and are responsible for the representations contained on each package of baby food that they sell.

47.    Defendants intended to induce reasonable consumers to rely on their marketing, all of which explicitly and implicitly convey that Defendants' baby foods are healthy for consumption by babies.  Such marketing include words written on the containers of Defendants' baby foods, including, but not limited to, the following words and phrases: "Organic," "Naturals," "Nothing Artificial Added," "Organic Baby Food," "Made with Real Ingredients," "No Artificial Colors, Flavors or Preservatives," "BPA-Free Packaging," "Non-GMO" (which stands for "genetically modified organism" which are also associated with health risks), etc. Below are some examples:

---

20 Subcommittee Report at p. 45.

21 HBBF Report at pp. 22-31.

22 *Id.*







48.    Plaintiffs justifiably relied on Defendants' marketing and suffered damages when they unknowingly purchased baby foods that contain toxic heavy metals and other undesirable toxins and contaminants.  Additionally, the minor Plaintiffs were harmed or placed at risk of harm

by consuming foods containing Toxic Heavy Metals and other undesirable toxins and contaminants.

49.     Defendants' false and misleading advertising deceives consumers into believing that they are purchasing and feeding their babies safe and nutritious baby foods, and through this deception, Defendants seek to induce consumers to purchase Defendants' baby food when they would have otherwise purchased alternative baby foods had they known that Defendants' baby foods contain toxic heavy metals such as arsenic, lead, cadmium and mercury, all of which have been proven to cause harm in infants and children.

### *Consumer Expectations Regarding Baby Food*

50.     Parents' instinctive desire to protect and ensure the healthy development of their children is well-known. As such, the safety of baby food is of paramount importance, and is a material fact, to consumers (such as Plaintiffs and Class members).

51.     More specifically, given the negative effects of Toxic Heavy Metals (such as arsenic, lead, cadmium, and mercury) on child development, the presence of these substances in baby food is a material fact to consumers (such as Plaintiffs and members of the Class). Indeed, consumers—such as Plaintiffs and members of the Class—are unwilling to purchase baby food that contains elevated levels of Toxic Heavy Metals.

52.     Defendants know that the safety of their brands of baby food (as a general matter) is a material fact to consumers. This is exemplified by the fact that Defendants' baby food products are marketed and labeled as *lacking* certain substances (*e.g.*, BPA, GMOs) that consumers believe would be deleterious to the health of children.

53.     Defendants also know that consumers (such as Plaintiffs and members of the Class) are unwilling to purchase their baby food products that contain elevated levels of Toxic Heavy Metals.

54.     As such, Defendants also know that the presence of Toxic Heavy Metals in their baby food products is a material fact to consumers (such as Plaintiffs and Class members).

55.     Baby food manufacturers (such as Defendants) hold a special position of public trust.  Consumers believe that they  would not sell products that are unsafe to their infants.[23]

---

[23] Subcommittee Report at p. 6.

*PLAINTIFFS' SECOND AMENDED COMPLAINT*
*[CLASS-ACTION]*

56.     Defendants knew that if the elevated levels of Toxic Heavy Metals in their baby food products was disclosed to Plaintiffs and Class members, then Plaintiffs and Class members would be unwilling to purchase Defendants' Baby Foods.

57.     In light of Defendants' knowledge that Plaintiffs and Class members would be unwilling to purchase baby food if they knew that their baby food products contained elevated levels of Toxic Heavy Metals, Defendants intentionally and knowingly concealed these facts from Plaintiffs and Class members, and did not disclose the presence of these Toxic Heavy Metals on the labels of Defendants' baby food products.

58.     Defendants knew that Plaintiffs and Class members would rely upon the representations and omissions contained on the packages of Defendants' baby food products, and intended for them to do so.

59.     Defendants knew that in relying upon the representations and omissions contained on the packages of Defendants' baby food products, Plaintiffs and Class members would view those products as being safe for consumption, given their represented lack of certain substances (*e.g.*, BPA, GMOs), and Defendants' concealment of the fact that baby food products contained elevated levels of Toxic Heavy Metals.

60.     Prior to purchasing Defendants' baby food products, Plaintiffs and Class members were exposed to, saw, read, and understood Defendants' representations and omissions regarding the safety of their baby food products, and relied upon them.

61.     As a result of Defendants' representations regarding the safety of its baby food, and the lack of certain deleterious substances (*e.g.*, BPA, GMOs), and Defendants' concealment of the fact that their brands of baby food contained elevated levels of Toxic Heavy Metals, Plaintiffs and Class members reasonably believed that Defendants' baby food products were free from substances that would negatively affect children's development.

62.     In reliance upon Defendants' representations and omissions, Plaintiffs and Class members purchased Defendants' baby food products.

63.     Had Plaintiffs and Class members known the truth—*i.e.*, that Defendants' brand of baby food products contained elevated levels of Toxic Heavy Metals, rendering them unsafe for consumption by children—they would not have been willing to purchase these products at all.

64.     Therefore, as a direct and proximate result of Defendants' misrepresentations and omissions concerning their baby food products, Plaintiffs and Class members purchased these

products and were harmed given that the presence of elevated levels of Toxic Heavy Metals in baby food renders it unsafe for human consumption, and are especially harmful to infants and children who are the most vulnerable in society.

65.    Plaintiffs bring this action on behalf of themselves, and Classes of similarly situated individuals, seeking recovery of damages, including actual damages, enhanced, statutory, and punitive damages, as well as equitable relief, including restitution, disgorgement, and injunctive relief, reasonable attorneys' fees and costs, as allowed under the various causes of action set forth herein.

66.    Plaintiffs are likely to consider purchasing baby food products in the future provided that Defendants institute corrective measures and cure their unfair and deceptive acts and practices. Should Defendants provide clear and non-misleading disclosures regarding the levels of Toxic Heavy Metals in their baby food products, improve their sourcing of ingredients and manufacturing processes, and accurately and effectively test final products of their baby food products for excessive levels of Toxic Heavy Metals, Plaintiffs would purchase baby food products from Defendants if they are truthfully labeled and do not contain excessive levels of Toxic Heavy Metals or other hazardous substances.

67.    Additionally, Defendants are equitably estopped from asserting defenses relating to statutes of limitations. Not only did Defendants fail to disclose the elevated levels of Toxic Heavy Metals in their baby food products, but Defendants also touted their brands of baby food as wholesome, natural, specially prepared to meet nutritional and developmental needs of babies and children, and lacking certain undesired substances, such as BPA and GMOs, and including certain beneficial substances, such as iron. Defendants also omitted and concealed the facts regarding the presence of Toxic Heavy Metals from the FDA and Congress, and actively and fraudulently concealed and continue to conceal the true nature of the ingredients of their baby food products.

## CLASS ACTION ALLEGATIONS

68.    As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

The "Class" is defined as all persons or entities who, within the State of California, from September 2009 through December 2021 (the "Class Period"), who purchased and/or consumed the subject Baby Foods from Beech-Nut Nutrition Company, Nurture, Inc. (which sells baby foods under the brand name HappyBABY), Plum Inc. d.b.a. Plum Organics, Gerber Products Company, Walmart, Inc. (which sells Baby Foods under the brand name Parent's Choice), and Sprout Foods, Inc., which contain high levels of toxic heavy metals including mercury, lead, arsenic and cadmium.

69.     Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.     Commonality**

70.     There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

a. Whether Defendants violated California's Unfair Competition Law by knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

(b)  Whether Defendants violated California's Unfair Competition Law by misrepresenting material information to consumers regarding Defendants' baby food products and their ability to be nutritious to a baby's diet;

(c)  Whether Defendants violated California's Unfair Competition Law by concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies and their development;

(d)  Whether Defendants violated California's Unfair Competition Law by using uniform, deceptive business practices, such as telling consumers via their websites that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results;

(e)   Whether Defendants represented and continue to represent that their baby foods are of a particular standard, quality, or grade when they are not;

(f)   Whether Defendants advertised their Baby Foods with the intent not to sell them as advertised;

(g)   Whether Defendants owed a duty of care to their customers to ensure that their baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

(h)   Whether Defendants owed a duty to investigate that their baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants; and

(i)   Whether Defendants' conduct as set forth above injured consumers, and if so, the extent of the injury.

**B.    Numerosity**

(j)   The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.    Typicality**

(k)   Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like the other Class Members, purchased Defendants' baby foods based on the reasonable belief that they were healthy, nutritious, and safe for consumption by babies. Plaintiffs, as with other Class Members, were deceived by Defendants' misrepresentations and omissions of fact.

(l)   The core issues which predominate over all the other issues in the litigation involve Defendants' unfair competition, violation of the CLRA and other violations, as discussed above.

(m)   Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.    Adequacy of Representation**

(n)   Plaintiffs will fairly and adequately protect the interests of the Class and

are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

(o)   To prosecute this case, Plaintiffs have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.    Superiority**

(p)   The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, and violation of Consumer Legal Remedies Act.

(q)   Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

(r)   As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

(s)   Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants and other unfair competition under the UCL, the predominance requirement needed for class action treatment is satisfied.

(t)   A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

    i.   Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

    ii.   It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

    iii.   The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

iv.  Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

v.  The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Fraudulent Concealment)

71.    Plaintiffs incorporate by reference each allegation set forth in preceding paragraphs as if fully stated herein.

72.    Defendants had a duty to disclose material facts to Plaintiffs and the Class given their relationship as contracting parties and intended users of the Baby Foods.  Defendants also had a duty to disclose material facts to Plaintiffs and the Class, namely that they were in fact manufacturing, distributing, and selling harmful Baby Food products unfit for human consumption, because Defendants had superior knowledge such that the transactions without this disclosure were rendered inherently unfair.

73.    Defendants possessed knowledge of these material facts since at least October 2019, when Healthy Babies Bright Futures published a report investigation the presence of Toxic Heavy Metals in baby foods, and found that "puffs and other snacks made with rice flour," "teething biscuits and rice rusks," "infant rice cereal," "apple, pear, grape, and other fruit juices," and carrots and sweet potatoes" manufactured by the Defendants as particularly high in Toxic Heavy Metals.

74.    During this time, Plaintiffs, and members of the Class, were purchasing and using the Defendants' Baby Food products without knowing they contained dangerous levels of Toxic Heavy Metals.

75.    Defendants failed to discharge their duty to disclose these materials facts.  In so failing to disclose these material facts to Plaintiffs and the Class, Defendants intended to conceal from Plaintiffs and the Class that Plaintiffs were purchasing and consuming Baby Food

products which contained harmful ingredients that are unfit for human use, and thus acted with scienter and/or an intent to defraud.

76.     Plaintiffs and the Class reasonably relied on Defendants' failure to disclose material facts insofar as they would not have purchased these Baby Foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury, had they known the truth, but would rather have purchased baby foods manufactured by one of Defendants' competitors.

77.     As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiffs, and the Class, suffered damages and were injured.  Furthermore, and as a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation)

78.     Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

79.     At all relevant times, Defendants designed, manufactured, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed Baby Foods into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that consumed Baby Foods, such as Plaintiff.

80.     Defendants were negligent, reckless, and careless and owed a duty to Plaintiff to make accurate and truthful representations regarding Baby Foods, Defendants breached their duty, thereby causing Plaintiff to suffer harm.

81.     Defendants represented to Plaintiffs via advertising, their websites, packaging, promotions, as well as by other means, that their baby foods were both safe and nutritious, when in fact, the baby food contained unsafe levels of toxic heavy metals far in excess of regulatory standards. In fact, because of the presence of unsafe levels of toxic heavy metals in Defendants' baby foods, the products presented an unacceptable risk of causing neurodevelopmental disorders, such as ADHD, as well as other illnesses.

82.     Additionally, Defendants represented to Plaintiffs that their baby foods were safe for their intended use, when in fact, Defendants knew or should have known that their products

were not safe for their intended purpose and should not have been consumed by babies. Defendants intended for Plaintiffs to rely on these representations and each of these misrepresentations were material at the time they were made. In particular, each of the misrepresentations concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether they should purchase or consume these Baby Foods.

83.    Defendants knew or should have known that their representations were false and were negligently made without regard for their truth.

84.    Plaintiffs reasonably placed their trust and reliance in Defendants' representations that its baby foods were as advertised, that is that they were healthy, nutritious and safe for consumption, and were harmed as described herein. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harms.

85.    Furthermore, Defendants' acts and omissions as described herein were committed in reckless disregard of Plaintiffs' rights, interests, and well-being to enrich Defendants. Defendants have yet to correct these misrepresentations about their baby foods.

86.    Plaintiffs and the members of the class were injured as a direct and proximate result of Defendants' negligent misrepresentations regarding their products, as described herein.

## THIRD CAUSE OF ACTION

### (Violation of *Business and Professions Code* sections 17200, *et seq.*)

87.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

88.    Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this cause of action on behalf of themselves and as a private attorneys general.

89.    *Business and Professions Code* section 17200, *et seq.*, also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendants

intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

***"Unlawful" Prong***

90.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

91.    As detailed in Plaintiffs' Cause of Action below, the Consumer Legal Remedies Act, California *Civil Code* sections 1750 - 1784, prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

92.    Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.

93.    Defendants violated Cal. Bus. & Prof. Code sections 17200, *et seq.* by engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

        a.  Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

        b.  Misrepresenting material information to consumers regarding Defendant's baby food products and their ability to be nutritious to a baby's diet;

        c.  Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies and their development; and

        d.  Using uniform, deceptive business practices, such as telling consumers via their websites that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

*"Unfair" Prong*

94.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

95.    Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members. These business practices include failing to inform its customers about the true nature of their baby foods, and engaging in a pattern or practice of concealing those facts and urging their customers to purchase more of their baby foods based on the false belief that the foods remain safe to consume for babies, thereby depriving consumers of sufficient information to make an informed decision when purchasing baby food. Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants. The impact on Plaintiffs and the Class Members has been described.  Defendants can have no possible justification for engaging in immoral, unethical and substantially injurious act of overcharging Plaintiffs and the Class Members through a misleading and deceptive conduct – selling baby foods that, in many instances, puts children at risk for severe developmental and health problems. Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on Defendants' advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do. Defendants' false advertising is also violative of public policy, as expressed in the CLRA.

96.    Specifically, Plaintiffs' parents and guardians paid hefty prices overtime for Defendant's baby food products, believing that they were the most healthy options for growing children. Defendants have refused to admit that their products are indeed dangerous, and they continue to market and sell their products in California. Defendants have engaged in this conduct

at the expense of their customers' rights as they could have easily informed their customers about the actual contents of their products, but did not do so.

97.     The harm to Plaintiffs and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

98.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

99.     Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs into purchasing and consuming certain baby foods which contain high levels of high toxic metals, and are highly likely to deceive and have deceived members of the consuming public.

100.     Defendants' business practices, as alleged herein, also constitute fraudulent conduct because Defendants did not deliver the products they advertised. Defendants' representations and omissions in California were material because they were likely to deceive reasonable consumers.

101.     Plaintiffs and Class Members did not know that the baby foods contained toxic heavy metals. Accordingly, Defendants should not have omitted and/or misrepresented the facts surrounding the baby food's true contents.

102.     Defendants omitted and misrepresented material information pertaining to its baby foods' true contents to defraud Plaintiffs by, among other things, convincing Plaintiffs and Class Members to purchase more of its products, and to otherwise ensure that Plaintiffs and Class Members would not discover Defendant's underlying fraud regarding its omissions and misrepresentations regarding the baby food products. As a result, Defendant violated Cal. Penal Code § 502.

103.     Defendants' fraud led to consumers paying for products that they would

not have paid for if they knew the truth about the fact that these products contained toxic heavy metals.

104.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money.  They did not receive the benefit of the bargain in purchasing the baby foods, and they spent their own time and money dealing with purchasing safer baby food alternatives.  Additionally, Plaintiffs were harmed or placed at risk of imminent harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

105.    Defendants acted intentionally, knowingly, and maliciously in violation of California's Unfair Competition Law.

106.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

107.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## FOURTH CAUSE OF ACTION

### (Violation of California *Civil Code* section 1750, *et seq.*)

108.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

109.    Defendants are "persons" as defined by *Civil Code* section 1761(c).

110.    Plaintiffs and each member of the Class are "consumers" within the meaning of *Civil Code* section 1761(d).

111.    The Consumers Legal Remedies Act applies to Defendants' conduct because it extends to transactions that are intended to or result in the sale or lease of goods or services to consumers. In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Defendants' conduct as described herein originated from California, and consumers purchased or used the involved baby foods in California.

112.    Defendants violated and continue to violate the CLRA by engaging in the following practices prescribed by *Civil Code* section 1770(a) in transactions with the members of the Class which were intended to result in, and did result in, the sale of products to Plaintiffs and the Class Members in violation of Civil Code section 1770, including: a) representing that goods or services have characteristics and uses that they do not have; b) representing that goods or services are of a particular standard, quality, or grade when they are not; c) advertising goods or services with intent not to sell them as advertised; and d) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

113.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

114.    Had Defendants disclosed to Plaintiffs and Class Members that its baby foods contained toxic heavy metals, often times in amounts surpassing those recommended or deemed safe by multiple regulatory bodies, Plaintiffs and the Class Members would have made different purchasing decisions.

115.    Had Defendants disclosed the truth, they would have been unable to continue in the same course of business.  As such, Defendants represented that its baby foods were healthy, nutritious and safe for consumption by babies, who have been shown to be extremely susceptible to the harsh effects of exposure to toxic heavy metals.  Plaintiffs and the Class Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

116.    As a direct and proximate result of Defendants' violations of California

Civil Code § 1770, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Such monetary and non-monetary damages have arisen from not receiving the benefit of the bargain in purchasing Defendants' baby foods, and increased time and expense in having to purchase safer alternatives and to determine whether Plaintiffs have been negatively affected by consuming Defendants' baby foods.

117.    Pursuant to *Civil Code* section 1782(d), the Class seeks a court order enjoining the above-described wrongful acts and practices of Defendants.

118.    Pursuant to *Civil Code* section 1782, Plaintiffs notified Defendants in writing by certified mail of the particular violations of Civil Code section 1770 and the other violations as alleged herein and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

119.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

120.    Plaintiffs and Class Members were enticed to purchase Defendants' Baby Foods, which were not as Defendants represented them to be.

121.    Had Plaintiffs and the Class known of the fact that the Baby Foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury, they would not have purchased Defendants' Baby Food, but would rather purchase baby foods manufactured by one of Defendants' competitors.

122.    Accordingly, Plaintiffs and Class Members were damaged, and Defendants were unjustly enriched, given that they defrauded Plaintiffs into purchasing said baby food products by not disclosing the fact that these products contained heavily toxic material.

123.    Furthermore, Defendants' conduct was willful, intentionally deceptive, and intended to cause economic injury to Plaintiffs and the Class. Defendants are therefore liable to pay punitive damages.

124.    Plaintiffs and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

**<u>PRAYER FOR RELIEF</u>**

125.    Plaintiffs STACIA CULLORS, an individual, L.P., a minor, N.B., a minor, and V.B., a minor, through their guardian ad litem STACIA CULLORS, ANTHONY BACANI, an individual, D.B., a minor, and E.B., a minor, through their guardian ad litem ANTHONY BACANI, JENNIFER CULLORS, an individual, as well as A.C., a minor, and J.C., a minor through their guardian ad litem JENNIFER CULLORS, and on behalf of all others similarly situated pray for relief and judgment against Defendants as follows:

(a)    An order certifying the Class and designating STACIA CULLORS, an individual, L.P., a minor, N.B., a minor, and V.B., a minor, through their guardian ad litem STACIA CULLORS, ANTHONY BACANI, an individual, D.B., a minor, and E.B., a minor, through their guardian ad litem ANTHONY BACANI, JENNIFER CULLORS, an individual, as well as A.C., a minor, and J.C., a minor through their guardian ad litem JENNIFER CULLORS as Class Representatives and their counsel as Class Counsel;

(b)    Awarding Plaintiffs and the proposed Class members actual or compensatory damages according to proof;

(c)    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d)    Awarding declaratory and injunctive relief as permitting by law or equity to individual Plaintiffs, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

(e)    Exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

(f)    Pre-judgment and post-judgment interest;

(g)    Awarding attorneys' fees and costs; and

(h)    Providing such further relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand trial by jury of all issues raised in this Complaint.

DATED: April 15, 2022                **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2022, I filed the foregoing **SECOND AMENDED COMPLAINT FOR DAMAGES** and this **Certificate of Service** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.


Dated: April 15, 2022                              **BEVERLY HILLS TRIAL ATTORNEYS,**

                                                   **P.C.**

                                                    /s/ Nilofar Nouri
                                                   Nilofar Nouri, Esq.
                                                   Attorney for Plaintiffs